DEBRA A. MAYWORM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mayworm v. Commissioner
Docket No. 20993-85.
United States Tax Court
T.C. Memo 1987-536; 1987 Tax Ct. Memo LEXIS 528; 54 T.C.M. (CCH) 941; T.C.M. (RIA) 87536; October 20, 1987. John D. Moats, for the petitioner. Barbara Horan, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: This is a proceeding for a redetermination of a deficiency in the amount of $ 9,470, plus additions to tax for negligence ($ 1,320.20 plus 50 percent of the interest on the underpayment) and late filing ($ 1,420.50) for the taxable year 1981. The issues to be decided are: (1) Whether petitioner qualifies as an innocent spouse under the provisions of section 6013(e); [1] and (2) whether petitioner is liable for additions to tax under sections 6653(a) and 6651(a)(1). FINDINGS OF FACT Petitioner, Debra A. Mayworm, was a resident of Colorado at the time the petitioner *530 was filed in this case. Petitioner obtained a nursing degree in 1975, and from 1977 through 1982 was employed as a registered nurse at St. Joseph's Hospital in Denver, Colorado. She has had no training or educational background in accounting or tax return preparation. On December 17, 1977, petitioner married Gary Litvin (Litvin). Litvin was employed as manager or salesperson at retail stereo outlet stores between 1977 and 1979. During May 1979, Litvin and his partner, David Breen, each contributed $ 25,000 to open a retail stereo business under the name Profound Sound. Part of Litvin's $ 25,000 was obtained from the sale of the home that petitioner and Litvin resided in at the time. Although petitioner was designated as vice-president of Profound Sound, Inc., she had little involvement in its business and financial activities. She did not attend Board of Directors or officers meetings and no salary, wages or dividends were received by her. She helped to address envelopes and worked at the sales counter on two occasions. Petitioner and Litvin separated on March 19, 1981, and a divorce decree, pursuant to the parties' agreement, was entered on January 20, 1982. From the *531 time petitioner married Litvin through their separation petitioner maintained her own separate checking and savings accounts. The deposits to her account were remuneration from her employment as a registered nurse. Petitioner paid grocery, utility and telephone bills from her account. Litvin also maintained his own separate checking account during the marriage, from which he made the house payments. After the separation petitioner moved into an apartment and paid her own rent, utilities and other expenses. A divorce decree was entered in Jefferson County District Court pursuant to the parties' agreement on January 20, 1982. Under the decree petitioner received the house, [2] subject to a mortgage, and $ 10,000 to be paid in installments; $ 1,000 at the time of the divorce and the balance over 24 months with 12-percent interest. The $ 10,000 was calculated by approximating the value of Litvin's interest in Profound Sound and splitting it in half. Only $ 2,800 of the $ 10,000 was paid. In addition, petitioner and Litvin agreed to file a joint return for taxable year 1981. The 1981 tax refunds were to be paid to petitioner in satisfaction of Litvin's $ 10,000 obligation, and *532 Litvin was responsible for any additional 1981 taxes. The joint return provision was inserted by Litvin's attorney in the final decree and petitioner was aware of it. The agreement also generally provided for relief from liability from each other's separate debts. [2]
During the marriage petitioner's and Litvin's joint income tax returns were filed in a manner similar to their other financial arrangements. Each would bring his or her separate information to Litvin's accountant, the accountant would ask questions, and tax would be computed. For 1981, the separation year, petitioner furnished Litvin's accountant with her pertinent tax information and again signed the return. Prior to signing the return petitioner believed Litvin's income from Profound Sound to be approximately $ 3,000 per month, or $ 36,000 per year. Upon signing the return petitioner became aware that Litvin's reported income from Profound Sound on the original 1981 return was about $ 69,000. Petitioner inquired of the accountant about the extra income and was told that it was income taken out of the company *533 that the accountant recommended be reported on the return. The 1981 joint income tax return was received by the Ogden, Utah, service center on June 25, 1982. Sometime during 1983 the Internal Revenue Service began collection action against petitioner and Litvin for a deficiency of approximately $ 13,000 on their 1981 joint return. Petitioner's savings were seized. Litvin and his new accountant decided to file an amended return to eliminate the deficiency by recharacterizing part of Litvin's receipts as a loan. Petitioner believed that Litvin and his accountant had spoken with an Internal Revenue Service employee and that the action was proper. She was assured by the accountant that the amended return was "legitimate." Petitioner also spoke several times with the IRS employee and believed that this employee had said that the amended return was "legitimate." Petitioner and Litvin signed the amended return and it was filed. Consequently, respondent released petitioner's seized accounts. This action arose as a result of an examination of the return, as amended, and a determination that the recharacterization was improper. Petitioner attempted to obtain records of Profound Sound *534 after petitioning this Court but was unsuccessful. OPINION When a husband and wife file a joint Federal income tax return liability for the tax due is joint and several; each may be called upon to pay the entire amount even though one had little or no income. Sec. 6013(d)(3). Limited amnesty is provided for an unknowing spouse in section 6013(e), the "innocent spouse" rule. That section states: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if --- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and *535 other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. [3]
The burden of proof is on petitioner to establish that she satisfies each element of the requirements of section 6013(e)(1). Shea v. Commissioner,780 F.2d 561 (6th Cir. 1986); Sonnenborn v. Commissioner,57 T.C. 373 (1971). The parties agree that the requirements of section 6013(e)(1)(A) and (B) have been met. At issue are the knowledge and inequity requirements of section 6013(e)(1)(C) and (D). As to the knowledge requirement, petitioner must establish that she did not know or have reason to know of an understatement of tax attributable to an omission of income of Gary Litvin. We agree with respondent that petitioner has not carried her burden of proof with respect to her lack of knowledge of the transaction. Basically, petitioner must prove lack of knowledge of an understatement. An understatement generally is the amount of tax required *536 to be shown on a return less the tax actually shown. Sec. 6661(b)(2)(A). The problem is that the tax required to be shown on a return is often a question of law as applied to the facts of a particular transaction. The Fifth Circuit, in Sanders v. United States,509 F.2d 162, 169 n.14 (5th Cir. 1975), discussed an analogous problem with a previous version of section 6013(e) in a footnote as follows: [4]
Since the propriety of including a given sum can finally be determined only by the IRS or the courts, subparagraph (B) seemingly makes ignorance of the fact that known receipts constitute taxable income a valid justification for not knowing or having reason to know of omissions from gross income. Nevertheless, the practical problems that have always prevented acceptance of an ignorance of the law defense in the criminal law area * * * arguably apply just as forcefully here. The old and new versions *537 of the statute raise a similar problem of interpretation; they both may turn on questions of law regarding whether a given receipt constitutes taxable income. Here, petitioner clearly did not know the legal or tax consequences of the purported loan in the amended return. However, in many if not most situations taxpayers are unaware of the tax consequences of particular transactions. Innocent spouse relief has been denied where the omission was caused by ignorance of the application of section 357(c), causing income to be realized when liabilities assumed upon formation of a corporation exceed the adjusted basis in the contributed assets. The spouses knew of the incorporation transaction, but not of the attendant tax consequences. Lessinger v. Commissioner,85 T.C. 824 (1985); McCoy v. Commissioner,57 T.C. 732 (1972). Sanders v. United States,509 F.2d at 169, summarized the position of this Court with respect to the knowledge requirement of the innocent spouse rule in this manner: If a spouse knows or has reason to know of a transaction that the IRS later determines resulted in income to the couple, that spouse cannot claim *538 the benefit of the innocent spouse provision even though he or she had no reason whatever to suspect that they had received taxable income.
See McCoy v. Commissioner, supra;Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F. 2d 617 (7th Cir. 1975). The Circuit Court also noted that while this interpretation may not square with the literal language of the statute, it avoids the practical problems associated with an ignorance of the law defense. The standard to be applied by this Court will remain knowledge of the facts rather than the legal consequences of a particular transaction. While it is clear that petitioner had no knowledge of the legal consequences of her husband's transactions, she clearly had knowledge of the basic underlying facts. Upon receipt of the original return she was apprised on the amount of income reported on the part of Litvin. Prior to signing the amended return she also became aware that the recharacterized amount was due to a purported loan, the proceeds of which were received by her ex-husband. Moreover, she checked with an IRS employee and Litvin's accountant to verify that this was correct treatment. *539 Because petitioner had actual knowledge of the basic structure of the transaction and of her ex-husband's receipt of the additional funds she is not eligible for relief under section 6013(e). See McCoy v. Commissioner, supra;Lessinger v. Commissioner, supra;Quinn v. Commissioner, supra.
Because the section 6013(e)(1)(C) issue has been decided for respondent there is no need to decide the section 6013(e)(1)(D) inequity issue. Section 6653(a), as in effect for the year at issue, imposes an addition to the tax for negligence or intentional disregard of rules and regulations. In this case petitioner was advised by Gary Litvin that the monies he received were repayments of loans and had been informed to that effect by a certified public accountant. This was noted on the return. Further, as far as petitioner knew, an Internal Revenue Service employee had looked at the pertinent facts and approved the transaction as "legitimate." Also, as a practical matter records of the transaction were not available to petitioner. The Court believes petitioner's testimony to be honest and credible. Under the circumstances of this case petitioner *540 and Litvin acted reasonably, in good faith reliance on what they believed was competent advice. Nelson v. Commissioner,19 T.C. 575 (1952). The final issue involves the late filing addition under section 6651(a)(1). The parties agree that the original return was filed late on June 25, 1982. They disagree as to whether an application for extension was filed. At trial respondent promised and this Court ordered respondent to use its best efforts to locate the application. Petitioner agreed she would be liable for the addition if respondent could not locate the application within 60 days. Respondent could not find an application for extension. Therefore, we hold petitioner is liable for an addition to tax under section 6651(a)(1). Decision will be entered for respondent in part and petitioner in part.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
2. Apparently, petitioner and Litvin acquired another house that was the subject of this decree. ↩
3. Sec. 6013(e)↩ was amended in 1984 retroactive to all years to which the Internal Revenue Code of 1954 applies. Sec. 424(c), Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 803. 4. Prior to 1984 the statute required lack of knowledge of an omission of an amount properly includable in gross income, rather than a lack of knowledge of an understatement. The 1984 amendment applies retroactively to the year at issue. See note 3, supra.↩