JACK LANGBERG AND MARION LANGBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Langberg v. Commissioner
Docket No. 12773-91
United States Tax Court
T.C. Memo 1994-223; 1994 Tax Ct. Memo LEXIS 224; 67 T.C.M. (CCH) 2981; T.C.M. (RIA) 94223; May 23, 1994, Filed *224 For petitioners: James R. Zuckerman. For respondent: Peter J. Gavagan and Christopher W. Schoen. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax Year
Deficiency
Sec. 6653(a)
1977
$ 60,866
$ 3,043
1978
31,539
1,577
Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the sole issue remaining for decision is whether, under section 6013(e), Marion Langberg (petitioner) is entitled to "innocent spouse" relief from joint and several liability for the deficiencies determined. For the following reasons, we hold that petitioner is not entitled to such relief. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners resided in Boynton Beach, Florida, when they filed their petition. However, petitioners resided in Plainview, New York, during the years at issue. Petitioner is a high school graduate. Petitioner married Mr. Langberg *225 in 1950. During the years at issue and at all relevant times, petitioner was a homemaker and the primary care provider for petitioners' three children. Mr. Langberg was an electrical contractor and, during the years at issue, an officer-shareholder in the Burmar Electrical Corp. (Burmar Electrical). Petitioners, throughout their marriage, have kept their household responsibilities separate. Mr. Langberg manages the family finances and makes the family's business decisions. Petitioner manages the household, purchases the family's groceries and clothing, and cared for the children when they were young. Petitioner pays for her purchases with department store charge cards or by personal check. However, petitioner relies on Mr. Langberg to pay the resulting charge card bills and to make sure sufficient funds are in the checking account. Although petitioner is not on an allowance, she has never asked Mr. Langberg how much money was in the checking account or how much she could spend. In 1977 and 1978, petitioners maintained two bank accounts, a joint checking account and a joint savings account. Although petitioner had access to the family checkbook, savings passbooks, and other *226 family financial records during the years at issue, Mr. Langberg balanced the family checkbook and paid the family's bills. Mr. Langberg's Business and Investment Activities
During the years at issue, Mr. Langberg did not deliberately conceal his business activities or the family's financial affairs from petitioner. However, Mr. Langberg generally did not discuss his investments or the family's financial affairs with petitioner. In 1977 and 1978, Mr. Langberg made most of his investment decisions at his office in Queens, New York. Mr. Langberg also kept the family's financial and investment records at his office. While the financial records were kept at Mr. Langberg's office for convenience, he would have shown them to petitioner if she had asked to see them. In 1976, Mr. Langberg paid $ 10,000 for a limited partnership interest in Fine Associates. The primary assets of Fine Associates were the distribution rights to the motion picture "Moonskin". Mr. Langberg purchased his partnership interest in Fine Associates because Alan Singer, his accountant and a promoter of the partnership, recommended it to him as a tax shelter that would reduce his 1976 taxable income. Mr. *227 Langberg did not have a working knowledge of the motion picture distribution industry when he purchased his interest in Fine Associates. Sometime in 1976, Mr. Langberg paid $ 22,500, also on the advice of Mr. Singer, for a limited partnership interest in Spring Properties, another partnership that Mr. Singer was promoting. The primary assets purportedly held by Spring Properties were the rights to master recordings of performances by various musicians. Mr. Langberg purchased his partnership interest for the purpose of acquiring a tax shelter that would reduce his 1976 taxable income. Mr. Langberg did not have a working knowledge of the master recording market when he purchased his partnership interest in Spring Properties. Petitioners claimed, on their 1976 Federal income tax return, a deduction of $ 34,852 with respect to Mr. Langberg's distributive share of losses claimed by the FineAssociates and Spring Properties partnerships. However, pursuant to a closing agreement executed in October 1983, petitioners were allowed to deduct $ 32,500, the cash paid by Mr. Langberg to purchase the partnership interests. The parties also agreed that, as a result of the allowed deductions, *228 Mr. Langberg's adjusted basis in his partnership interests was reduced to zero, and that he would not be entitled to an increase in his basis "until such time and only to the extent that * * * [Mr. Langberg paid any] nonrecourse obligations" he had incurred with respect to these investments. [1] Mr. Langberg never made any payments with respect to any such nonrecourse obligations. In 1977, Mr. Langberg, on the advice of Mr. Singer, purchased the rights to the master recording "Teddy Wilson and Eubie Blake at the New York School". The purchase price for the master recording was $ 65,441, of which Mr. Langberg paid $ 20,000 in 1977, $ 22,500 in 1978, and $ 22,941 [2] in 1979. Mr. Langberg paid the purchase price, except for the initial down payment of $ 2,000, by drawing checks on the Burmar Electrical checking account to himself *229 as payee, and endorsing and depositing those checks with the bank as the promissory notes became due. Mr. Langberg purchased the Teddy Wilson-Eubie Blake master recording as a tax shelter for the purpose of reducing his taxable income. Petitioners' Lifestyle
During the years at issue, petitioners owned a house in Plainview, New York, and Mr. Langberg owned two life insurance policies, of which petitioner was the beneficiary, having face values of $ 100,000 and $ 30,000, respectively. During the years at issue, petitioners also owned two automobiles, a 1975 Lincoln Town Car and a 1977 Ford Thunderbird. [3] Petitioners took a 1-week vacation in Puerto Rico during each of the years at issue, and in 1977 they also took a 1-week vacation to New England. Petitioners did not take any other trips or make any additional large purchases in 1977 and 1978. *230 In 1980, Mr. Langberg filed a voluntary petition for bankruptcy under chapter 7 of title 11 of the United States Code. On October 7, 1985, the Bankruptcy Court for the Eastern District of New York released Mr. Langberg from liability for his dischargeable debts under 11 U.S.C. sec. 523 (1988). On November 15, 1985, petitioner paid $ 5,000 to Marianne DeRosa, the trustee of Mr. Langberg's bankruptcy estate, for his joint and survivorship interest in the family's house. Petitioner acquired the cash necessary to purchase Mr. Langberg's interest in the house by selling the diamond ring that Mr. Langberg had given her on their 20th wedding anniversary. On January 17, 1986, petitioner sold the family's house to Jerry and Karen Schulman for $ 226,500. Petitioner's net proceeds from the sale, after payment of the mortgage of $ 9,348.85 and a $ 25,000 creditor's lien obtained in the *231 Bankruptcy Court against Mr. Langberg, was $ 175,856.15. Petitioner and Mr. Langberg used the proceeds from the sale to move to Florida and pay for their living expenses in years immediately following. Petitioners' 1977 and 1978 Federal Income Tax Returns
Petitioners reported, on their 1977 income tax return, gross income of $ 163,625, [4] composed of salary and wages of $ 153,105, interest income of $ 6,257, dividend income of $ 77, long-term capital gain of $ 2,652, and other income of $ 1,534. Petitioners reported, on the Schedule C attached to their 1977 income tax return, that Mr. Langberg had a cost basis of $ 165,000 in the Teddy Wilson-Eubie Blake master recording. Although petitioners reported no gross income from Mr. Langberg's investment in the Teddy Wilson-Eubie Blake master recording, they did claim a depreciation deduction of $ 93,000, business expenses of $ 1,000, and an investment credit of $ 11,000 with respect to this investment of Mr. Langberg. Petitioners reported Schedule E losses of $ 47,138, in part attributable to Mr. Langberg's distributive share of losses, $ 29,688 and $ 4,691, respectively, incurred by the Spring Properties and Fine Associates *232 partnerships. Petitioners also reported a $ 7,934 carryover of unused investment credits, presumably with respect to Mr. Langberg's investments in the Spring Properties and the Fine Associates partnerships. [5] These claimed deductions and credits, coupled with Schedule A allowable itemized deductions of $ 6,156, reduced petitioners' 1977 income tax liability to zero. *233 Petitioners reported, on their 1978 Federal income tax return, gross income of $ 113,741, [6] composed of salary and wages of $ 110,231, interest income of $ 2,148, long-term capital gain of $ 162, and other income of $ 1,200. Although petitioners reported no gross income from Mr. Langberg's investment in the Teddy Wilson-Eubie Blake master recording, they did claim a depreciation deduction of $ 60,000, business expenses of $ 900, and an investment credit of $ 6,666 with respect to this investment of Mr. Langberg. Petitioners reported Schedule E losses of $ 47,274, in part attributable to Mr. Langberg's distributive share of losses, $ 19,005 and $ 14,112, respectively, incurred by the Spring Properties and Fine Associates partnerships. Petitioners also reported a $ 18,934 carryover of unused investment credits with respect to Mr. Langberg's investments in the Teddy Wilson-Eubie Blake master recording, the Spring Properties partnership, and the Fine Associates partnership. These claimed deductions and credits, coupled with Schedule A allowable itemized deductions of $ 14,855, reduced petitioners' 1978 income tax liability to zero. *234 Mr. Singer prepared petitioners' 1977 and 1978 Federal income tax returns. Petitioner, Mr. Langberg, and Mr. Singer signed petitioners' 1977 and 1978 income tax returns on the lines under the jurat that read, in pertinent part: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete." However, petitioner did not review the completed income tax returns before she signed them. Petitioner also did not ask Mr. Langberg or Mr. Singer any questions about the correctness of the income tax returns or any information contained in them. OPINION Section 6013(a) provides that spouses may file a joint Federal income tax return. If a husband and wife file a joint return, the tax is computed on their aggregate income and the liability with respect to such tax is joint and several. Sec. 6013(d)(3); Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985). However, a spouse is relieved of this joint and several liability for tax if he or she can show that: (1) A joint income tax return was filed for the year in issue; *235 (2) there was a substantial understatement of tax on that return attributable to grossly erroneous items of the other spouse; [7] (3) in signing the income tax return, he or she did not know or have reason to know of the substantial understatement; and (4) it would be inequitable to hold him or her liable for the deficiency. Sec. 6013(e); Bokum v. Commissioner, 992 F.2d 1132, 1133-1134 (11th Cir. 1993), affg. 94 T.C. 126 (1990). If the substantial understatement of tax is due to a claim of deduction, credit, or basis, the spouse also must show that the understatement exceeds a specified percentage of that spouse's adjusted gross income for the most recent year ending before the date the deficiency notice was mailed. Sec. 6013(e)(4); Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). *236 A spouse seeking relief under section 6013(e) has the burden of proving that each requirement of the statute has been satisfied. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Silverman v. Commissioner, T.C. Memo. 1994-153. Failure to satisfy any requirement of section 6013(e) will prevent the spouse from qualifying for "innocent spouse" relief. Stevens v. Commissioner, supra at 1504; Grubich v. Commissioner, T.C. Memo. 1993-194. Petitioners filed joint income tax returns for 1977 and 1978. The parties agree that there were substantial understatements of tax on those returns and that those understatements were attributable to items of Mr. Langberg. The parties further agree that petitioner's 1990 adjusted gross income was less than $ 20,000 and that the understatements of tax for 1977 and 1978 exceed 10 percent of her 1990 adjusted gross income. Remaining in dispute are (1) whether losses and credits claimed by petitioners on their 1977 and 1978 income tax returns were grossly erroneous *237 as defined by section 6013(e)(2)(B), (2) whether petitioner, in signing the income tax return, knew or had reason to know of the substantial understatements, and (3) whether it would be inequitable to hold petitioner liable for the deficiency in question. For the reasons that follow, we find that petitioner had reason to know of the substantial understatements within the meaning of section 6013(e)(1)(C). Petitioner therefore is not entitled to "innocent spouse" relief, and we need not address whether the losses and credits claimed by petitioners on their 1977 and 1978 income tax returns were grossly erroneous items as defined by section 6013(e)(2)(B) or whether it would be inequitable to hold her liable for the deficiencies. Cf. Bokum v. Commissioner, supra at 1134; Silverman v. Commissioner, supra.
The relief-seeking spouse generally has reason to know of a substantial understatement of tax if he or she would have reason to know of the transaction that gave rise to the substantial understatement. Purcell v. Commissioner, 826 F.2d 470, 474 (6th Cir. 1987), affg. 86 T.C. 228 *238 ((1986); see also Smith v. Commissioner, 70 T.C. 651, 673 (1978); Mayworm v. Commissioner, T.C. Memo. 1987-536. While courts consistently apply this approach to omission of income cases, the Courts of Appeals for the Ninth, Eighth, and Second Circuits have adopted a more lenient approach to deduction cases that only requires "a spouse seeking relief to establish that she did not know and did not have reason to know that the deduction would give rise to a substantial understatement." Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court; see also Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101. However, in Bokum v. Commissioner, 94 T.C. at 153, we declined to apply the Price approach to deduction cases. Although the Court of Appeals for the Eleventh Circuit, the court *239 to which an appeal would lie in this case, affirmed our decision in Bokum, it did so on other grounds, see Bokum v. Commissioner, 992 F.2d at 1134, and Bokum v. Commissioner, 992 F.2d. 1136, 1142-1143 (11th Cir. 1993), and it has not had further occasion to construe the lack of knowledge requirement in a disallowed deduction case. [8] We nevertheless believe that petitioner had reason to know under both approaches, making any disparity between the Price approach and our approach immaterial to our disposition of this case. See Park v. Commissioner, T.C. Memo. 1993-252. *240 The relief-seeking spouse has reason to know of a substantial understatement of tax if, at the time the tax return was signed, a reasonably prudent taxpayer in his or her position would have known that the stated tax liability was erroneous or that further investigation was warranted. Stevens v. Commissioner, supra at 1505; Hayman v. Commissioner, supra at 1261; Price v. Commissioner, supra at 965; see also Kistner v. Commissioner, 18 F.3d 1521,     (11th Cir. 1994), revg. on other grounds T.C. Memo. 1991-463. The relief-seeking spouse is not excused from the imputation of constructive knowledge merely because he or she is a homemaker and relied on the other spouse to handle the family's finances. Stevens v. Commissioner, supra at 1507; see also Kistner v. Commissioner, supra at    . Rather, courts will impute to the relief-seeking spouse constructive knowledge of the transaction if he or she turned a blind eye to facts within his or her reach that would have put a *241 reasonably prudent taxpayer on notice to inquire further. McCoy v. Commissioner, 57 T.C. 732, 734 (1972); see also Stevens v. Commissioner, supra at 1507; Adams v. Commissioner, 60 T.C. 300, 303 (1973). Courts consider a number of factors in determining whether the relief-seeking spouse had reason to know of the substantial understatement of tax. Among these factors are: (1) The relief-seeking spouse's level of education, (2) his or her involvement in the financial and business activities of the family, (3) any substantial unexplained increase in the family's standard of living, and (4) the culpable spouse's evasiveness and deceit about the family's finances. Bokum v. Commissioner, 94 T.C. at 148; see also Price v. Commissioner, supra at 965; Stevens v. Commissioner, supra at 1505; Sanders v. United States, 509 F.2d 162, 167-168 (5th Cir. 1975). However, no single factor or set of factors is dispositive, and we do not make our determination by counting *242 the factors favoring petitioner's position. Silverman v. Commissioner, T.C. Memo. 1994-153; see also Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522. Rather, the issue is a factual question to be determined after a review of the entire record. Guth v. Commissioner, supra at 443-444; Park v. Commissioner, supra.
Petitioner is a high school graduate, who, for most of her adult life, has depended on Mr. Langberg for financial support. Petitioner has always deferred to Mr. Langberg's judgment with respect to the family finances, limiting her involvement in the family financial activities to paying the day-to-day household expenses. Although Mr. Langberg did not intentionally mislead petitioner about their finances during the years at issue, he generally did not discuss their finances with her, and petitioner never made any independent inquiry in an attempt to obtain information about these matters. Petitioners have never had a lavish or unusual lifestyle, and they experienced no noticeable *243 improvement in their standard of living during the years at issue. Although petitioners purchased a new car to replace the one that petitioner had been driving, they did not make any other large purchases during 1977 and 1978. Petitioners, in addition to their annual trip to Puerto Rico, took a 1-week trip to New England in 1977. However, petitioners did not take any other trips in 1977 and 1978. While the foregoing facts are indicative of a spouse who did not have reason to know of a substantial understatement of tax, that is not the end of our inquiry. See Robertson v. Commissioner, T.C. Memo. 1992-32. We must also determine whether the erroneous deductions reported on petitioners' 1977 and 1978 income tax returns were sufficient to impose upon petitioner a duty of inquiry into their accuracy. See Hayman v. Commissioner, 992 F.2d at 1262; Stevens v. Commissioner, 872 F.2d at 1505. Although petitioner did not review her 1977 and 1978 income tax returns before they were filed, she is deemed to have constructive knowledge of their contents. Hayman v. Commissioner, supra at 1262; *244 Levin v. Commissioner, T.C. Memo. 1987-67. This is because "In signing a return, a taxpayer represents that the matters stated therein are true and correct to the best of his or her knowledge." Stevens v. Commissioner, supra at 1507. Petitioner therefore had a duty to review her 1977 and 1978 income tax returns, and she is not relieved of that obligation because she relied on petitioners' accountant to complete them properly. Hayman v. Commissioner, supra at 1262; Silverman v. Commissioner, supra; Park v. Commissioner, supra; see also United States v. Boyle, 469 U.S. 241, 251-252 (1985). Petitioner, by failing to review her 1977 and 1978 income tax returns, averted her eyes from facts that would have given her reason to know of the substantial understatements of tax. While large losses or credits do not always result in a shift in the taxpayer's standard of living, see Stevens v. Commissioner, supra at 1506, "Tax returns setting forth large deductions, *245 such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability." Hayman v. Commissioner, supra at 1262 (emphasis added). Accordingly, a reasonably prudent taxpayer, reviewing his or her tax return, would have doubts about the accuracy of any return setting forth such deductions and would inquire further. Id.; Park v. Commissioner, T.C. Memo. 1993-252; see also Stevens v. Commissioner, supra at 1505-1507. If petitioner had made even a cursory examination of the 1977 and 1978 income tax returns, she would have seen that petitioners were claiming large deductions with respect to Mr. Langberg's investments in the Fine Associates and the Spring Properties partnerships and the Teddy Wilson-Eubie Blake master recording. These deductions had the effect of eliminating petitioners' tax liabilities for the years at issue. Given the considerable amounts of gross income reported on petitioners' 1977 and 1978 income tax returns, *246 these substantial deductions reasonably would have put petitioner on notice that she should inquire further. Cf. Hayman v. Commissioner, supra at 1262; Stevens v. Commissioner, 872 F.2d at 1507; Park v. Commissioner, supra.
Although further inquiry by petitioner of her husband or the tax return preparer might well have resulted in her signing the returns as prepared, see Price v. Commissioner, supra at 966; Estate of Killian v. Commissioner, T.C. Memo. 1987-365, satisfying that duty to inquire is a threshold requirement for "innocent spouse" relief. See Stevens v. Commissioner, supra at 1507; Levin v. Commissioner, T.C. Memo. 1987-67; see also Price v. Commissioner, supra at 965. Our task is not to speculate on the assurances petitioner might have received if she had questioned her husband or Mr. Singer about the erroneous deductions reported on the 1977 and 1978 joint returns, and whether she could have reasonably *247 relied on such assurances. Rather, our task is to determine whether a reasonably prudent taxpayer, in petitioner's position, would have been concerned about the accuracy of the returns, and refused to sign them unless and until her doubts had been laid to rest. Cf. Stevens v. Commissioner, supra at 1507; Levin v. Commissioner, supra; see also Price v. Commissioner, supra at 965. Petitioner argues that the large deductions set forth on her 1977 and 1978 income tax returns were insufficient to have put her on notice that further inquiry was warranted because "she had faith and trust in * * * [Mr. Langberg] and had no reason to question him." Petitioner's argument, as a practical matter, is that her deliberate ignorance, caused by her failure to review her income tax returns, should be forgiven under the "innocent spouse" provision of the Internal Revenue Code because such ignorance arose out of spousal trust. However, it is well settled that spousal trust does not obviate a taxpayer's duty to inquire where a review of his or her tax return would indicate that such inquiry is *248 warranted. Stevens v. Commissioner, supra at 1507; see also Hayman v. Commissioner, supra at 1262; Bokum v. Commissioner, 94 T.C. at 149-150. The large deductions that eliminated petitioners' tax liability for the years at issue were sufficient to warrant inquiry, and petitioner's failure to inquire about these deductions cannot be excused because of her deference to Mr. Langberg's handling of the family finances. Cf. Stevens v. Commissioner, supra at 1507; Hayman v. Commissioner, supra at 1262. Accordingly, a reasonable person in petitioner's circumstances would have been put on notice that further inquiry was warranted. Petitioner therefore was alerted to sufficient facts that would have caused a reasonable person to have doubts about the accuracy of her returns, and a reasonably prudent person would not have signed those returns unless those doubts had been investigated and laid to rest. Cf. Stevens v. Commissioner, supra at 1507. In light of these facts and circumstances, *249 we hold that petitioner had reason to know of the substantial understatements of tax within the meaning of section 6013(e)(1)(C), and petitioner does not qualify for "innocent spouse" relief under section 6013(e). Cf. Hayman v. Commissioner, supra at 1261-1262; Park v. Commissioner, T.C. Memo. 1993-252. To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. There is no evidence in the record that would tend to show that Mr. Langberg incurred any nonrecourse obligations with respect to his investments in Fine Associates and Spring Properties.↩
2. Although Mr. Langberg testified that he paid $ 20,000 in 1979, the record shows that he paid principal of $ 20,000 and interest of $ 2,941 on the note in 1979.↩
3. Petitioners traded in another automobile when they purchased the Thunderbird for petitioner in 1977.↩
4. Although the parties stipulated that petitioners reported gross income of $ 163,648, the income tax return introduced into evidence shows that petitioners reported gross income of $ 163,625. The discrepancy between these amounts is not material for disposition of the issue before us.↩
5. While the parties have suggested that the carryover of unused investment credits relates to the Spring Properties and the Fine Associates investments, there is no clear indication of this fact in the record. This is because the copy of petitioners' 1977 Federal income tax return introduced into evidence does not include an attachment showing the computation of the carryover of unused credits as required by line 6 of the Form 3463 attached to petitioners' return.↩
6. Although the parties stipulated that petitioners reported gross income of $ 113,974, the income tax return introduced into evidence shows that petitioners reported gross income of $ 113,741. The discrepancy between these amounts is not material for disposition of the issue before us.↩
7. Sec. 6013(e), as originally enacted, provided relief to the spouse only if the understatement of tax was due to an omission of income attributable to the other spouse. However, in 1984, Congress amended sec. 6013(e), see Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 424, 98 Stat. 494, 801-803, to provide relief to the spouse if the understatement of tax was attributable to any claim of deduction, credit, or basis for which there is no basis in fact or law. Sec. 6013(e); Stevens v. Commissioner, 872 F.2d 1499, 1503-1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The amendment is retroactively applicable to all open tax years to which the Internal Revenue Code applies. DEFRA sec. 424(c), 98 Stat 803; Bokum v. Commissioner, 94 T.C. 126, 138 n.13 (1990), affd. 992 F.2d 1132↩ (11th Cir. 1993).
8. However, in a recent omission of income case, the Court of Appeals for the Eleventh Circuit cited Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), revg. an Oral Opinion of this Court, and Erdahl v. Commissioner, 930 F.2d 585 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101 with approval. Kistner v. Commissioner, 18 F.3d 1521 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463↩.