NOEL N. BELLOUR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bellour v. Commissioner
Docket No. 9586-93
United States Tax Court
T.C. Memo 1995-284; 1995 Tax Ct. Memo LEXIS 279; 69 T.C.M. (CCH) 3010; June 22, 1995, Filed *279 Decisions will be entered under Rule 155. Noel N. Bellour, pro se. For respondent: Michelle K. Loesch. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the joint Federal income tax of Jean C. and Noel N. Bellour for the taxable year ended December 31, 1988, in the amount of $ 8,239, and additions to tax under sections 6653(a)[1] and 6661 in the amounts of $ 412 and $ 2,060, respectively. Mr. Jean C. Bellour is not a petitioner in this case. The issue for decision is whether Noel N. Bellour (petitioner) is entitled to relief from the deficiency and additions to tax determined by respondent as an innocent spouse under the provisions of section 6013(a) for the taxable year here involved, and whether petitioner is liable for the additions to tax under sections 6653(a) *280 and 6661 as determined by respondent. FINDINGS OF FACT At the time of the filing of her petition in this case petitioner resided in Redmond, Washington. Petitioner and her former husband, Jean C. Bellour (Mr. Bellour) filed a joint Federal income tax return for the calendar year 1988. Petitioner and Mr. Bellour were married on November 7, 1971, and remained married throughout the entire year 1988. Petitioner was separated from Mr. Bellour and began living apart from him on or about January 16, 1988. They were divorced on July 11, 1990. On or about October 1, 1985, Mr. Bellour formed Coastal Funding Corp. as a Washington corporation. The articles of incorporation were signed by Mr. Bellour as incorporator under date of September 23, 1985. The provisions of Article VI stated that the number of directors constituting the initial board of directors was three and gave the name and address of each director. Mr. Bellour was one of the directors, petitioner was the second listed director, and the final director was Alan Cohen. Mr. Bellour had asked Mr. Cohen, who was a friend of his, to be a director of the corporation. Under Article VII the only name and address of an incorporator *281 is that of Mr. Bellour. Petitioner became an officer and director of the corporation at the request of her husband. Petitioner signed the bylaws of the corporation as a director under date of November 18, 1985. The bylaws defined the duties of the president, vice president, secretary, and treasurer of the corporation and also provided in Article 5 a requirement that loans contracted on behalf of the corporation must be authorized by the board of directors. The bylaws provided that certificates representing shares of the corporation should be signed by the president or vice president, and by the secretary, and should carry the legend that they were subject to the bylaws of the corporation. In the bylaws there were conditions on the transfer of shares of the corporation. Article V of the articles of incorporation provided that the authorized capital stock of the corporation was $ 50,000, and that the total number of shares which the corporation had the authority to issue was 50,000 shares, and stated that the aggregate value received or to be received for the issuance of the nonpar shares would not exceed $ 50,000. Upon formation of the corporation, stock was issued to Mr. Bellour *282 pursuant to Article V of the articles of incorporation. The corporate records reflect that at various times Mr. Bellour advanced funds to the corporation, and the advances were characterized on the books of the corporation as loans. There appears on the records an amount as interest on loans. There also appears on the records items of amounts of loans transferred to capital. Under date of October 1, 1985, the amount of $ 500 is in this column. A further amount of $ 29,500 appears in this column without a date by it, and under date of September 30, 1986, the records show loans transferred to capital of $ 20,000. Under date of December 31, 1986, loans to capital of $ 20,000 is shown, making a total of $ 70,000 of loans stated to be transferred to capital. A statement of financial condition of Coastal Funding Corp. as of September 30, 1987, shows total assets of $ 106,778, current liabilities of $ 13,202, and no long-term liabilities. Under stockholder's equity it shows capital stock issued of $ 100,000, additional paid-in capital of $ 20,000, retained earnings as a deficit of $ 53,877, and deferred income on service rights of $ 27,453, with a stockholder's equity of $ 93,576. *283 The statement shows an adjusted net worth of the corporation of $ 90,441. An attached statement of changes in financial position shows capital stock issued of $ 50,000, and a statement of the various uses of the financial resources. Notes to the statement show that in the year 1987 an additional $ 50,000 in capital stock was issued to Colorado Banker Mortgage, but because of management differences subsequent to the fiscal year ending on September 30, 1987, Coastal Funding Corp. was negotiating to repurchase the Coastal Funding stock owned by Colorado Banker Mortgage. In May 1988, 100 percent of the stock of Coastal Funding Corp. was sold to South County Capital Corp., doing business as Westates Mortgage Co. The buy and sell agreement with respect to the stock was signed by Mr. Bellour and by petitioner. This buy and sell agreement recited that the corporation had issued 1,000 shares of stock to Mr. Bellour, which was 100 percent of the shares of the outstanding stock. It also recited that Mr. Bellour, petitioner, and Alan Cohen were each a director of the corporation. The sales price was stated to be $ 44,000, which was to be paid $ 22,000 in cash and $ 22,000 in monthly payments *284 on a promissory note, bearing interest at the rate of 10 percent per annum to be amortized over 24 months. The note was made jointly to Jean C. and Noel N. Bellour, and the payments on the note were to be made to them jointly. Petitioner's joint Federal income tax return with Jean C. Bellour was prepared by a certified public accountant (C.P.A.). The C.P.A. that prepared the return for petitioner and her former husband was also the C.P.A. for Coastal Funding Corp. Petitioner talked to the accountant in connection with the preparation of the joint return she filed with her former husband for the year 1988, and the accountant told her how the sale of the stock was to be handled on the return. He stated that he was reporting it as a loss and that the loss would be reported as a section 1244 stock loss. Petitioner and her husband used the $ 22,000 cash payment received at the time of the sale to pay off community debts. Petitioner is a registered nurse. During the year 1988 she received $ 22,948.36 as income from Overlake Hospital Medical Center in Bellevue, Washington, which was reported on her joint income tax return. The amount of $ 1,765.25 was withheld from petitioner's *285 1988 salary as Federal income tax. When petitioner was discussing the preparation of the joint income tax return with her husband and their accountant in the accountant's office, the accountant told her that "We'll file a section 1244 stock loss for the loss on the business". She did not ask him why that was done, or ask any other questions about the nature of the stock loss, but relied on his advice. The section 1244 stock loss deduction claimed on petitioner's and her former husband's joint income tax return was a grossly erroneous item under section 6013(e)(2)(B). Petitioner and Mr. Bellour during 1988 had a joint account with Merrill Lynch (account no. 33522117). Sometime in 1988, after petitioner was living separately from Mr. Bellour, the address on the account was changed to Mr. Bellour's address. Petitioner and Mr. Bellour received dividends in the amount of $ 313 from this account in 1988. Petitioner did not receive a copy of the Form 1099 issued by Merrill Lynch with respect to the dividends paid on this joint Merrill Lynch account. The joint return of petitioner and Mr. Bellour for the year 1988 reported under wages, salaries, tips, etc., the amount of $ 71,721, *286 which included petitioner's salary from Overlake Hospital Medical Center. The balance of wages and salaries reported were earnings of Mr. Bellour. Each of the Forms W-2 issued to Mr. Bellour showed withholding of Federal income tax. The withholding of taxes on the various Forms W-2 issued to Mr. Bellour were in the respective amounts of $ 2,185, $ 658, and $ 1,990. Attached to the return was a Form 2106, Employee Business Expenses, for Mr. Bellour. On this form under Part I, entered in TEP 1, item 3, was $ 2,278 for travel expense while away from home, including lodging, airplane, car rental, etc., and an amount of $ 2,216 designated as business expenses not included in lines 1 through 3 above. These expenses were allegedly incurred by Mr. Bellour after petitioner separated from him around January 16, 1988. On Form 4797 attached to petitioner's and Mr. Bellour's joint income tax return for 1988 under Sales of Business Property, Part II, Ordinary Gains and Losses, appeared: 1244 stock, Coastal Mortgage; date acquired 10-15-85; date sold 5-28-88; gross sales price $ 42,000; cost or other basis, plus improvements and expenses of sale $ 70,000; loss $ 28,000. No dividends from *287 Merrill Lynch were reported on the joint 1988 return. Respondent in the notice of deficiency to petitioners disallowed the claimed 1244 stock loss in the amount of $ 28,000, increased income by dividends not reported of $ 313 and interest not reported of $ 248. She increased income by $ 2,000 as "IRA-pension/annuity", and increased income by "misc. deductions limited by AGI" by $ 2,827. Under the addition to tax for negligence, the adjustments to which the addition applied were listed as: 1244 stock loss $ 28,000, dividends not reported $ 313, employee business expenses $ 2,216, interest not reported $ 248, IRA-pension/annuity $ 2,000, and penalty tax-early withdrawal $ 200. The understatement of tax on petitioner's and Mr. Bellour's 1988 income tax return was a substantial understatement of tax as defined in section 6013(e)(3). The petitioner's preadjustment year within the meaning of section 6013(e)(4)(C) is 1992, and petitioner's Form 1040 for that year reported adjusted gross income of $ 47,605. The liability as asserted in the notice of deficiency in this case, including interest, additions to tax, and other amounts, exceeds 25 percent of petitioner's preadjustment year *288 adjusted gross income. Although petitioner is a registered nurse, she does not have a background in business and has never operated a business. She took no business courses in college and has taken no accounting or tax courses. During 1988 petitioner was employed as a medical/surgical nurse by Overlake Hospital in Bellevue, Washington. The Form 1040 as filed by petitioner and Mr. Bellour reported taxable income of $ 19,674, with a resulting tax of $ 2,951. The return reported as tax withheld $ 6,599 and excess Social Security tax of $ 284, making a total of $ 6,883, and showing tax overpaid and a refund due of $ 3,932. Petitioner and Mr. Bellour received a $ 3,932 refund as a result of the claim on their 1988 joint Federal income tax return. Petitioner and her former husband divided the $ 3,932 refund equally between themselves. OPINION Generally, when spouses file a joint Federal income tax return they are jointly and severally liable for the tax with respect to the year for which the return is filed. Sec. 6013(d). However, section 6013(e) provides that under certain circumstances one spouse may be relieved of this joint and several liability. Section 6013(e)[2] provides *289 that a spouse may be relieved of liability under regulations prescribed by the Secretary if four specific items are shown, namely: (1) That a joint return has been made under section 6013 for the year involved; (2) on that return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) the other spouse establishes that in signing the return he or she did not know and had no reason to know that there was such substantial understatement; and (4) taking into account all of the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. *290 In addition to establishing the four above items, it must also be shown that the understatement exceeds a specified percentage of petitioner's adjusted gross income for the preadjustment year. In this case, the parties have stipulated that the understatement is sufficient to meet the requirement of section 6013(e)(4) that it exceeds 25 percent of petitioner's preadjustment year gross income. In addition, here the parties agree that petitioner and her former husband filed a joint return for the year 1988 and that this return contained a substantial understatement of tax. Therefore, the issues remaining for decision with respect to petitioner's claim to innocent spouse relief are: (1) Whether petitioner knew or had reason to know of the substantial understatement; (2) were the items adjusted by respondent (other than the $ 28,000 claimed 1244 stock loss which was disallowed by respondent and stipulated to be a grossly erroneous item) grossly erroneous; and (3) whether it would be inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement. The record here is clear that petitioner knew, fairly specifically since she signed the bylaws and *291 was named in the articles of incorporation as a director, the details of the incorporation of Coastal Funding Corp. Although Mr. Bellour was the primary manager of the corporate affairs, petitioner did have substantial knowledge of the corporation setup and business. She stated in her testimony that she knew her husband had paid something into the corporation, and she knew that the amount received on the sale of the stock was $ 44,000. She also knew or should have known from the articles of incorporation that for the 1,000 shares of stock of the corporation her husband was to pay $ 50,000. Even though petitioner had this knowledge, she did not question the statement made by the accountant who was preparing the joint return that the loss would be claimed as a section 1244 stock loss. She should have questioned, at a minimum, why $ 42,000, rather than $ 44,000, was used as the sales price, and why $ 70,000 was used as the cost of the stock rather than $ 50,000. She stated in her testimony that she thought her husband had made loans to the corporation which would take his investment in it up to $ 70,000. From her testimony in general, it is clear that she did understand the business *292 of the corporation and, in general, its financial condition. In fact, she stated at one juncture that she understood that the corporation had lost money. The picture here is far more a picture of an intelligent woman who is not versed in business transactions talking to an accountant about preparation of a joint tax return and discussing with that accountant the very item that was handled in a manner that causes the largest adjustment made by respondent to the joint tax liability, namely, the disallowance of the claimed $ 28,000 loss on 1244 stock. Her explanation for not further questioning the method of claiming the stock loss was that she trusted the accountant and thought he knew what he was doing. Under a number of cases, it is apparent that the situation here would not meet the standards of not knowing or having a reason to know of the grossly erroneous item. This Court and several courts of appeals have held that lack of knowledge of the tax consequences of a transaction, as distinguished from lack of knowledge of the facts of the transaction, does not establish a lack of knowledge of the understatement. Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990), *293 affd. 992 F.2d 1132 (11th Cir. 1993); Purcell v. Commissioner, 86 T.C. 228, 238 (1986), affd. 826 F.2d 470, 472 (6th Cir. 1987). It is petitioner's contention, however, that this Court's position in that regard is contrary to the holding of the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, in Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court. While the Court of Appeals for the Ninth Circuit in Price did not strictly adopt the standard as set forth in Bokum v. Commissioner, supra, and Purcell v. Commissioner, supra, it did not state that a spouse did not have reason to know of the substantial understatement if she knew all of the facts surrounding the transaction and merely did not possess knowledge of the tax consequences. Rather, in Price v. Commissioner, supra at 964, the Court of Appeals for the Ninth Circuit stated: Of itself, ignorance of the attendant legal or tax consequences *294 of an item which gives rise to a deficiency is no defense for one seeking to obtain innocent spouse relief. McCoy v. Commissioner, 57 T.C. 732, 734 (1972); Mayworm v. Commissioner, 54 T.C.M. (CCH) 941, 944 (1987); Price v. Commissioner, 53 T.C.M. (CCH) 1414 (1987) * * * If a spouse knows virtually all of the facts pertaining to the transaction which underlies the substantial understatement, her defense in essence is premised solely on ignorance of law * * * [Price v. Commissioner, 53 T.C.M. at 1416.] In such a scenario, regardless of whether the spouse possesses knowledge of the tax consequences of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary. [Citations omitted.] In this case, petitioner did know virtually all of the facts pertaining to the transaction with respect to the income from the sale of the Coastal Funding Corp. stock. Therefore, under Price v. Commissioner, supra, whether or not she had knowledge of *295 the tax consequences, she did have reason to know of the substantial understatement. Petitioner knew of the incorporation of the Coastal Funding Corp., she knew of its bylaws, she knew the amount paid in by her husband for stock, she knew the amount of stock he held, and she knew the sales price of the stock. In fact, she knew as much about all of the transactions insofar as it would affect the tax liability with respect to any loss on the sale of the stock, as did her husband. Effectively her testimony is that she trusted the accountant and did not question that he handled the transaction correctly. This might well go to the addition to tax for negligence, but it certainly does not under Price v. Commissioner, supra, or any other cases we have found or to which our attention has been called, show that she did not know, or have reason to know, of the substantial understatement. Furthermore, here, the record is clear that petitioner shared in a tax reduction from the method of reporting the transaction, as she received a refund of tax in excess of the amount withheld from her own taxable income because of the way various items were reported on the joint tax return. Also, *296 she received one-half of the receipts from the sale of the stock, and, under these circumstances, it is certainly not inequitable to hold her liable. Petitioner has totally failed to show that any of the other items disallowed by respondent were grossly erroneous items. In order for a deduction to constitute a grossly erroneous item it must be shown that the deduction had no basis in fact or law. The petitioner in this case has made no showing that the claimed other business expense deductions taken by her husband had no basis in fact or law. She relies entirely on the fact that respondent disallowed these deductions. This is not sufficient to establish that the disallowed deductions are grossly erroneous items. The showing must be that the deductions were in the nature of phony deductions. Here petitioner has shown nothing with respect to the disallowed deductions and, therefore, has not established that the items were grossly erroneous. Purcell v. Commissioner, 86 T.C. at 240. The only showing that petitioner has made with respect to the $ 2,000 withdrawal by her husband from his IRA account is that she did not know he had made the withdrawal. *297 Since the $ 2,000 withdrawal is an income item, it is a grossly erroneous item. Sec. 6013(e)(2)(A) and (3). However, petitioner has not shown that she made any inquiries of her husband as to whether all his income was reported, or even the extent to which she reviewed the returns. In our view, petitioner has not shown that she did not have reason to know of the omission of the $ 2,000 from the joint return. This record indicates that if petitioner had asked Mr. Bellour whether he had receipts other than those reported on the return he would have told her of the $ 2,000 withdrawal from his IRA account. The record shows that the $ 313 dividend was from a joint Merrill Lynch account petitioner had with Mr. Bellour. Therefore, this income was as much hers as Mr. Bellour's. Based on this record, we hold that petitioner has failed to show that she is entitled to innocent spouse relief under section 6013(e). The final issue is whether petitioner is liable for the additions to tax under sections 6653(a) and 6661. Section 6653(a)(1) provides for an addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations, and section 6653(a)(2) *298 imposes an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. When respondent has determined an addition to tax under section 6653(a), the burden is on petitioner to show error in that determination. Negligence has been defined as the failure of a person to use the care that a reasonable or ordinarily prudent person would use under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). While reliance on a lawyer or an accountant does not relieve an individual from the responsibility of checking the accuracy of his return, we have held that reasonable reliance by a taxpayer on the advice of an accountant is sufficient, in certain circumstances, to avoid the addition to tax for negligence, even if the professional advice received is wrong. Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986). Particularly is the advice of counsel considered sufficient to relieve a taxpayer of the addition to tax for negligence in circumstances which involve complicated issues *299 with respect to which an ordinarily intelligent individual would not be expected to have knowledge. See United States v. Boyle, 469 U.S. 241, 250-251 (1985), where it is pointed out that most taxpayers are not competent to discern error in the substantive advice of an accountant or an attorney. In the present case whether a loss on the stock sale is properly taken under section 1244 is a relatively sophisticated tax matter. Petitioner knew the facts here present, but relied on the accountant to compute and properly show on the return the loss on the sale of the stock and to decide whether the loss was properly taken under section 1244. Respondent makes much of the fact that the sales price was shown as $ 42,000 rather than $ 44,000, and the cost as $ 70,000 rather than $ 50,000. However, the gross sales price of an item is not necessarily the sales price to be reported on a return since there can be adjustments for selling and comparable expenses. Also, here petitioner was aware that her husband had made loans to the corporation which were later converted to capital, and possibly could justify a claimed investment of $ 70,000. The fact that the *300 accountant's advice was wrong does not mean necessarily that petitioner was negligent. Rather, reliance on this advice might be expected from a reasonably prudent person of petitioner's education. Therefore, such reliance is sufficient to overcome the presumption attaching to the correctness of respondent's determination of the addition to tax for negligence. The other items, except the $ 313 dividend from Merrill Lynch, were items that involved a question of judgment, such as what are properly deductible travel expenses, and how the withdrawal from an IRA account should be handled. In this regard, petitioner likewise was justified in relying on the advice of the accountant. The small omission of a dividend which was not within petitioner's actual knowledge is not sufficient to justify the addition to tax for negligence. While in a number of cases we have held that the addition to tax under section 6661 is to be considered separately from the reasonableness of petitioner's actions under section 6653(a), the Court of Appeals for the Ninth Circuit in Vorsheck v. Commissioner, 933 F.2d 757 (1991), affg. in part and revg. in part an Oral Opinion of *301 this Court, has held that where the record is sufficient to find no negligence under section 6653(a) because a taxpayer acted as a reasonably prudent person would have in relying on the advice of a lawyer or accountant, the same reliance is sufficient to cause petitioner not to be liable for the addition to tax under section 6661. We have, therefore, accepted this holding with respect to cases where an appeal would be to the Court of Appeals for the Ninth Circuit. See Erhard v. Commissioner, T.C. Memo. 1992-376, affd. 46 F.3d 1470 (9th Cir. 1995). We therefore conclude that petitioner is not liable for the additions to tax under section 6653(a)(1) and (2) and section 6661. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Sec. 6013(e) provides in part: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.↩