FRANK H. ROBERTSON AND PATRICIA S. ROBERTSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robertson v. Commissioner
Docket No. 15981-82
United States Tax Court
T.C. Memo 1992-32; 1992 Tax Ct. Memo LEXIS 30; 63 T.C.M. (CCH) 1822; T.C.M. (RIA) 92032; January 14, 1992, Filed *30 Decision will be entered under Rule 155. Steven Toscher, for petitioner Patricia S. Robertson. Gregory Arnold, for respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 20,395 in petitioners' 1978 Federal income tax. The parties have reached agreement with respect to several issues which will be given effect in the Rule 155 computation. The remaining issues before the Court are: (1) Whether Mrs. Robertson failed to report $ 159 of dividend income received from General Electric Company. We hold that she did. (2) Whether Mrs. Robertson failed to report $ 127 of interest income received from series E or H savings bonds, Security Federal, and Mutual Federal Savings. We hold that she did. (3) Whether Mrs. Robertson failed to report a taxable pension distribution of $ 6,529 received from General Electric Company. We hold that she did. (4) Whether Mrs. Robertson qualifies for relief from joint and several liability as an innocent spouse pursuant to the provisions of section 6013(e). [1] We hold that she qualifies for innocent spouse relief for a portion of the tax deficiency but not for all.
*31 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated in this opinion by reference. Petitioners resided in Palos Verdes Peninsula, California, when they filed their petition. Petitioners first met when they attended junior high school in Oklahoma City, Oklahoma. They were high school sweethearts and dated all through their high school and college years. In 1960, during Mrs. Robertson's (hereinafter petitioner) final year in college, petitioner and Mr. Robertson were married. In 1982, they were divorced. In 1960, petitioner graduated, magna cum laude, from the University of Oklahoma with a bachelor of arts degree in European and Asian studies. She later obtained a master of arts degree in creative writing from Stanford University where she graduated with honors and a final grade point average of 3.8. In 1961, Mr. Robertson graduated from the University of Oklahoma with a degree in mechanical engineering. He later obtained a master of arts degree in business administration from Syracuse University. Following his graduation from the University of Oklahoma, Mr. Robertson accepted an executive *32 position with General Electric. He remained employed with General Electric for 16 years. During petitioners' marriage, petitioner worked solely as a teacher or a homemaker. In 1978 or 1979, petitioner acquired a job in addition to her teaching job to help finance the college education of petitioners' two sons. The record does not reflect the nature of this second job. During their marriage, petitioners maintained one joint checking account. Both petitioner and Mr. Robertson had access to this checking account and wrote checks on it. Petitioner wrote checks to pay for utilities, water, garbage collection, and, intermittently, mortgage payments on their home. Petitioner reconciled the bank statements for this account each month. Petitioners or Mr. Robertson also owned stock in General Electric, held savings bonds, and maintained other bank accounts at Security Federal and Mutual Federal Savings. Additionally, Mr. Robertson participated in General Electric's pension plan. Petitioner's father had opened the Mutual Federal account for petitioner to help finance her college education. Other than this account, petitioner did not know the other assets existed until petitioners *33 divorced in 1981. During their marriage, Mr. Robertson made all the family's investment decisions. Petitioners agreed that because Mr. Robertson was in the work place, was very knowledgeable, and was in a high level executive position, he was best suited to make such decisions. Mr. Robertson investigated all investments prior to entering into them. During the course of their marriage, he invested in a limited partnership entitled California Flowerland, a limited partnership entitled "T & H" with Haller Associates, Inc., and an investment entitled Orange County Grass Ski Slopes. He also purchased 21 coin-operated television sets as an investment. Other than this latter investment, petitioner claimed she did not know these investments existed until petitioners divorced in 1981. We find that petitioner knew Mr. Robertson made investments but did not know any details of the investments. During their marriage, Mr. Robertson instructed petitioner not to open any mail that was addressed to him or to both of them jointly. Mr. Robertson allowed petitioner to open mail that was addressed solely to her. Petitioner did not believe Mr. Robertson's mail or their joint mail contained anything *34 secretive or mysterious; therefore, she followed his instructions. Mr. Robertson maintained all of the couple's financial records at home or at his office. Petitioner's involvement in the preparation of petitioners' joint Federal income tax returns was to give information to Mr. Robertson regarding credit cards, mortgage payments, and charitable contributions. Mr. Robertson then compiled all the remaining pertinent information. Mr. Robertson then met with an accountant who prepared the return. Petitioner never met with the accountant. Once the return was prepared, neither the accountant nor Mr. Robertson explained its contents to petitioner. Petitioner never reviewed any returns on her own. Generally, Mr. Robertson would briefly interrupt petitioner while she was performing household duties and would ask her to sign the return, which she did. Petitioner believed that whatever Mr. Robertson prepared and asked her to sign was in her and their best interest. In 1977, Mr. Robertson applied for and was granted a line of credit with Crocker National Bank (Crocker account) in Torrance, California. Both petitioner's and Mr. Robertson's name appeared on this account. No evidence *35 was entered indicating petitioner's signature appeared on the application for this account or on the agreement and disclosure form. Mr. Robertson retained possession of the checkbook and maintained all records on the account. Petitioner never saw any records, checks, or statements on this account. Petitioner did not know the Crocker account existed until petitioners' divorce in 1981. Mr. Robertson assumed the liability for the account in their divorce. In 1978, Mr. Robertson began investigating the potential of becoming a limited partner in Horizon Partners, Ltd. (Horizon Partners). Horizon Partners was a limited partnership that invested in real estate. Mr. Robertson either met or talked on the phone with the promoter of Horizon Partners and then filled out an application. On September 28, 1978, he issued a $ 15,000 check to the promoter which he drew on the Crocker account. The investment was held in Mr. Robertson's name. Petitioner did not know this investment existed until petitioners' divorce in 1981, and it was awarded to Mr. Robertson pursuant to the divorce decree. In late 1978, petitioners began remodeling their home. The improvements totaled approximately $ 20,000. *36 The home improvements were financed by a second mortgage with Crocker National Bank for $ 20,000 which petitioners obtained on January 12, 1979. The second mortgage was repaid at $ 240 per month beginning in February 1979. On their 1978 joint Federal individual income tax return, petitioners reported $ 37,660 as their distributive share of loss from Horizon Partners. Petitioner signed but never reviewed petitioners' 1978 tax return or knew of its contents. Petitioners calculated they were entitled to a refund of $ 9,289 for this taxable year. Petitioner claims to have never seen the corresponding refund check. Mr. Robertson believed the tax savings from the Horizon Partners investment was deposited back into the Crocker account. Respondent does not dispute that petitioners' 1978 tax return contained a "substantial understatement of tax" within the meaning of section 6013(e). Respondent timely issued a notice of deficiency to petitioners for taxable year 1978 in which he determined: (1) Petitioners failed to report $ 159 of dividend income received from General Electric Company; (2) petitioners failed to report $ 99 of interest income earned from series E or H savings bonds; *37 (3) petitioners failed to report $ 18 of interest income earned from Security Federal; (4) petitioners failed to report $ 10 of interest income earned from Mutual Federal Savings; (5) petitioners failed to report $ 6,529 of "other income" received from General Electric; and (6) petitioners improperly claimed a loss of $ 37,660 attributable to the Horizon Partners investment. Petitioners timely filed a petition for redetermination with this Court. Prior to trial, petitioner and Mr. Robertson separately entered Stipulations of Settled Issues with respondent. In these stipulations, petitioners conceded the disallowance of $ 16,570 of the loss claimed from Horizon Partners, and respondent conceded the allowance of $ 21,090. The parties stipulated that the adjustment of $ 16,570 related to a deduction for which there was no basis in fact or law within the meaning of section 6013(e)(2). The parties further stipulated that Mr. Robertson conceded all the remaining adjustments in respondent's notice of deficiency. Therefore, the only determinations respondent made that this Court need address are whether petitioner is liable for the above-referenced dividend, interest, and pension income. *38 Pursuant to the Stipulation of Settled Issues that petitioner entered into with respondent, petitioner was not precluded from seeking relief as an innocent spouse pursuant to section 6013(e). Petitioner thereafter filed for and was granted leave to amend her and Mr. Robertson's joint petition to assert innocent spouse status. OPINION Issue 1. Dividend, Interest, and Pension Income
Respondent determined that petitioner failed to report dividend, interest, and pension distribution income in taxable year 1978. Petitioner presented no evidence disputing respondent's determination that she received yet failed to report this income. Accordingly, we sustain respondent's determination on this issue. Issue 2. Innocent Spouse Relief
A. Generally Because petitioner filed a joint return with Mr. Robertson for 1978, petitioner is jointly and severally liable for the deficiency due to their failure to report the above-referenced income items and for the deficiency due to the disallowance of the claimed loss of $ 16,570 attributable to Horizon Partners. Sec. 6013(d)(3). Petitioner will be relieved of her liability for these deficiencies if she can establish her entitlement *39 to relief as an innocent spouse pursuant to section 6013(e). To be entitled to innocent spouse status, the spouse claiming relief must establish for the taxable year in question that (1) she and her spouse filed a joint return; (2) the return contained a "substantial understatement of tax"; (3) the substantial understatement of tax was attributable to the other spouse's "grossly erroneous items", i.e., items for which there was no basis in fact or law; (4) in signing the return, she did not know and had no reason to know of the substantial understatement; and (5) it would be inequitable to hold her liable for this substantial understatement. Sec. 6013(e)(1); Price v. Commissioner, 887 F.2d 959, 961-962 (9th Cir. 1989), revg. an Oral Opinion of this Court. These requirements are conjunctive; the failure to prove any one of them will prevent the taxpayer from qualifying for innocent spouse relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The taxpayer bears the burden of proving each of these elements by a preponderance of the evidence. Id. at 1504. In the *40 instant case, we note first that the parties have stipulated and/or agreed to several issues. The parties stipulated that petitioner and Mr. Robertson filed a joint Federal income tax return for the taxable year 1978. Additionally, respondent does not dispute that the return contained a "substantial understatement of tax" within the meaning of section 6013(e). The parties also stipulated that $ 16,570 of the loss claimed by petitioners from Horizon Partners was a "grossly erroneous item", i.e., it related to a deduction for which there was no basis in fact or law. Entitlement to innocent spouse relief can be considered on an item-by-item basis. Purcell v. Commissioner, 826 F.2d 470 (6th Cir. 1987), affg. 86 T.C. 228 (1986). B. Application to Unreported Dividend, Interest, and Pension Income Regarding petitioner's entitlement to relief as an innocent spouse for the deficiency due to petitioners' failure to report the dividend, interest, and pension income, petitioner presented no evidence other than that she was unaware of receiving the majority of this income and was unaware of the corresponding underlying assets of such income until petitioners *41 divorced in 1981. We assume without deciding that these items are attributable to Mr. Robertson. Nevertheless, petitioner presented no evidence, inter alia, that it would be inequitable to hold her liable for this deficiency. Petitioner has failed to satisfy her burden of proof and, accordingly, is not entitled to innocent spouse relief for the deficiency attributable to these income items. C. Application to Horizon Partners Deduction Regarding petitioner's entitlement to relief as an innocent spouse for the deficiency due to the disallowed loss of $ 16,570 attributable to Horizon Partners, petitioner must still prove by a preponderance of the evidence that (1) this disallowed portion was a grossly erroneous item attributable to Mr. Robertson; (2) in signing the return, she did not know or have reason to know of the substantial understatement attributable to this item; and (3) it would be inequitable to hold her liable for this deficiency. We conclude first that the disallowed portion of the deduction for the Horizon Partners investment was a grossly erroneous item attributable solely to Mr. Robertson. Mr. Robertson independently investigated, applied for, and purchased this *42 investment. He purchased it from funds of which petitioner was not aware. He also independently compiled its pertinent tax information to relay to an accountant who prepared the 1978 joint return. When petitioner signed this return, she did not know of its contents and specifically did not know the Horizon Partners investment existed. See infra pp. 13-16. Finally, the investment became Mr. Robertson's sole and separate property after petitioners' divorce. For the same foregoing reasons, we also conclude that petitioner did not actually know of the substantial understatement attributable to the Horizon Partners deduction when she signed the 1978 tax return. We also conclude that petitioner did not have reason to know, i.e., constructive knowledge, of the substantial understatement attributable to the Horizon Partners investment at the time she signed the 1978 return. A spouse has constructive knowledge of a substantial understatement if at the time she signed the return, a reasonable person in her circumstances could have been expected to know of the substantial understatement. Guth v. Commissioner, 897 F.2d 441, 443-444 (9th Cir. 1990), affg. T.C. Memo. 1987-522; *43 Price v. Commissioner, supra at 965. The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, in a case involving a deduction, examined the following factors to determine whether a spouse claiming innocent spouse relief could have been expected to know of the substantial understatement: (1) The spouse's involvement in the family's business and financial affairs; (2) the culpable spouse's evasiveness and deceit concerning the couple's finances; (3) the spouse's level of education; and (4) he presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns. Price v. Commissioner, supra at 965. In application to the instant case, petitioner minimally participated in the family's financial affairs during petitioners' marriage. Her only financial responsibilities were to pay certain household expenditures, to reconcile monthly bank statements for the couple's joint checking account, and to gather certain information for preparation of their joint income tax returns. As discussed in the following paragraphs, Mr. Robertson, *44 a well-educated individual, was responsible for the family's remaining financial affairs. During their marriage, Mr. Robertson independently acquired accounts, liabilities, and investments for the family. Specifically, he acquired savings bonds, bank accounts, stock in General Electric, and an interest in General Electric's pension plan. He also acquired the line of credit at Crocker National Bank. Petitioner was not aware of any of these assets or the Crocker account during petitioners' marriage. Mr. Robertson also independently acquired several investments during their marriage. Petitioners had agreed that Mr. Robertson was best suited to make investment decisions. While petitioner knew Mr. Robertson made investments, she did not know the details of any investment except for the coin-operated television sets. Most important to the instant issue, Mr. Robertson independently investigated, applied for, purchased, and owned the Horizon Partners investment. He purchased this investment by writing a check out of the Crocker account, an account petitioner did not then know existed. Again, petitioner was not aware of this investment until petitioners divorced in 1981. Mr. Robertson *45 was also primarily responsible for compiling the pertinent tax information for preparation of petitioners' joint income tax returns. While petitioner did give Mr. Robertson information regarding credit cards, mortgage payments, and charitable contributions, she never participated in compiling investment information. Further, only Mr. Robertson met with the accountant who prepared their joint returns. Under informal and casual circumstances at Mr. Robertson's request, petitioner signed the returns Mr. Robertson presented to her. Petitioner firmly believed that whatever Mr. Robertson asked her to sign was in her and their best interest. In sum, during the course of petitioners' marriage, petitioner minimally participated in the family's financial affairs. She also had only minimal knowledge of such affairs. While we do not believe Mr. Robertson was evasive or deceitful concerning the family's finances, we do believe that because Mr. Robertson made most of the family's financial decisions and maintained all the family's financial records, petitioner never acquired more knowledge in this area. Further, petitioner never unilaterally acquired more knowledge of assets, liabilities, *46 or investments that were held in Mr. Robertson's or petitioners' joint names because petitioner never opened mail addressed solely to Mr. Robertson or to them jointly. We note also that while petitioner was well-educated, neither of her liberal arts degrees would have enabled her to be familiar with business, accounting, bookkeeping, or financial concepts so as to question Mr. Robertson's financial decisions. Additionally, her employment as a homemaker and a teacher would not have enabled her to be familiar with such concepts. Finally, the record does not disclose any unusual or lavish expenditures of a type which would apprise petitioner that an erroneous deduction was claimed in 1978. No evidence was presented that petitioners' standard of living increased during 1978 or 1979. On the contrary, petitioner acquired an additional job in this period to help finance the college education of petitioners' two sons. The only expenditures that petitioners made during this time frame that might appear unusual were those for home improvements totaling approximately $ 20,000. However, these improvements were financed by a second mortgage, not by the tax savings from the Horizon Partners *47 investment. For the foregoing reasons, we conclude that a reasonable person in petitioner's circumstances could not have been expected to know in signing the 1978 tax return that it contained a substantial understatement attributable to the Horizon Partners investment. Our inquiry of petitioner's knowledge does not end here, however. We must next determine whether she knew enough facts to put her on notice that an understatement existed attributable to the Horizon Partners investment. See Guth v. Commissioner, 897 F.2d at 444-445. If a spouse should question the legitimacy of a deduction, then she is under a duty to inquire. Price v. Commissioner, 887 F.2d at 965. In order for a spouse's duty of inquiry to arise, however, she must first harbor doubts about the accuracy of the return. Stevens v. Commissioner, 872 F.2d at 1507. In the instant case, when petitioner signed the 1978 tax return, she was unaware of any facts pertaining to the Horizon Partners investment. She had no reason to question her trust in Mr. Robertson regarding financial decisions or the accuracy of their joint return. There were also no unexplained *48 lavish or unusual expenditures around this time which should have aroused petitioner's curiosity. In sum, there were no facts present which would have caused petitioner to harbor doubts about the accuracy of petitioners' 1978 tax return. Accordingly, a reasonable person in petitioner's circumstances would not have been on notice that a substantial understatement existed such that she would have questioned the accuracy of the 1978 tax return. Respondent argues that the facts in the instant case are similar to those in another case in which we held that the spouse claiming relief did have reason to be on notice of the potential understatement. Namely, respondent argues that Lessinger v. Commissioner, 85 T.C. 824 (1985), revd. on other grounds 872 F.2d 519 (2d Cir. 1989), is dispositive of this present issue. The facts in Lessinger are distinguishable because in that case the spouse claiming relief had some knowledge of the underlying transaction giving rise to the substantial understatement but still did not question the legitimacy of the tax return. Id. at 838. In the instant case, petitioner had no knowledge of the Horizon Partners *49 investment when she signed the 1978 tax return. We last conclude that it would be inequitable to hold petitioner liable for the deficiency due to the disallowed loss from Horizon Partners. Whether it is inequitable to hold a spouse liable for a deficiency in tax is determined on the basis of all the facts and circumstances. Sec. 1.6013-5(b), Income Tax Regs. If the spouse claiming relief did not significantly benefit from the erroneous deduction, we have held it would be inequitable to hold her liable for the tax due from the erroneous deduction. Purcell v. Commissioner, 86 T.C. 228, 241-243 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Normal support is not considered a significant benefit. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs.
In the instant case, petitioner did not significantly benefit from the tax savings attributable to the loss claimed from the Horizon Partners investment. As discussed previously, the only unusual expenditure around this time period was for the home improvements. However, these improvements were financed by a second mortgage, not from the tax savings *50 attributable to this erroneous deduction. Mr. Robertson testified that he believed any tax savings were deposited into the Crocker account. Because petitioner did not have access to this account during petitioners' marriage, petitioner did not significantly benefit from the tax savings deposited back into the account. Even if Mr. Robertson used funds from the Crocker account to pay for everyday household expenditures, normal support is not considered a significant benefit. Lastly, petitioner did not significantly benefit from the tax savings because Mr. Robertson acquired both the Crocker account and the Horizon Partners investment as his sole and separate liability/property after petitioners' divorce. In sum, under the circumstances of this case, we conclude that it would be inequitable to hold petitioner liable for the deficiency due to the disallowed loss from the Horizon Partners investment. Accordingly, having established all the necessary requirements, we conclude that petitioner is entitled to innocent spouse relief for the deficiency due to the disallowed loss of $ 16,570 attributable to Horizon Partners. We note that we need not rule on the admissibility into evidence *51 of a letter written by petitioner to Mr. Robertson because the letter proved unnecessary to resolve this case properly. Due to concessions and to reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩