T.C. Memo. 1997-18


UNITED STATES TAX COURT


GLENYCE R. PETERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17376-94.                    Filed January 8, 1997.


<u>Terry L. Moore</u>, for petitioner.

<u>Mark J. Miller</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax for taxable years 1990 and 1991 in the amounts of $20,958 and $27,090, respectively.  Respondent further determined that petitioner is liable for additions to tax

under section 6651(a)(1)[1], in the amount of $2,625 for taxable year 1990, and in the amount of $5,280 for taxable year 1991, for failing to timely file tax returns for those taxable years. Respondent also determined that petitioner is liable for the accuracy-related penalty pursuant to section 6662(a), in the amount of $4,192 for taxable year 1990, and in the amount of $5,418 for taxable year 1991. The sole issue for decision is whether petitioner qualifies for "innocent spouse" relief under section 6013(e) for either taxable year 1990 or 1991. We hold that she does not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. At the time the petition was filed in this case, petitioner resided in Menomonie, Wisconsin.

Petitioner and her former husband, Carl L. Peterson (Mr. Peterson), were married in 1973. They were divorced in 1993. The couple filed a joint Federal income tax return for taxable year 1990 on October 9, 1991. They filed their joint Federal income tax return for taxable year 1991 on August 18, 1992.

Petitioner received a bachelor's degree in home economics from the University of Wisconsin in 1958. She received a

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

master's degree in home economics from the same institution in 1963. After receiving her degrees, petitioner became a school teacher, teaching at both the junior high and senior high school levels. She continued teaching at the high school level until 1968 when she became a professor of home economics at the University of Wisconsin, located in Stout, Wisconsin. Since 1968, petitioner has been a college professor. Petitioner's expertise lies in the area of textile design and quality analysis.

Petitioner's former husband, Mr. Peterson, was an attorney who practiced law in Menomonie, Wisconsin, during the years at issue. He was granted a power of attorney over the financial affairs of Martha Burgess (Burgess) in 1985, following the death of her husband. Mr. Peterson served in this capacity until Burgess' death in 1990. After Burgess' death, her brother, Ralph Grundman (Grundman), was appointed administrator of her estate (the estate). Grundman retained Mr. Peterson to serve as the estate's attorney. In February 1991, Grundman died and his widow, Edna (Edna), replaced him as administratrix of the estate. Mr. Peterson suffered a stroke in June 1991.

Sometime after February 1991, Edna, in her capacity as administratrix of the estate, began receiving notices regarding the estate's delinquent tax status. This concerned Edna, and she initiated an inquiry into the estate's condition. An accounting of the estate's assets provided by Mr. Peterson was incomplete,

and his affiliation with the estate was terminated in February 1992.  Soon thereafter, Edna hired Roger Schilling (Schilling), a certified public accountant, to perform an extensive examination of the estate.  Schilling's examination revealed that Mr. Peterson had misappropriated $136,901.92 from the estate during 1990, and $186,000 from the estate during 1991.

In March 1994, Mr. Peterson was indicted on three counts of theft, under Wis. Stat. sec. 943.20(1)(b)(West 1996).  Mr. Peterson pleaded guilty to two counts and was sentenced to 15 years in prison.

In addition to Mr. Peterson's occupation as an attorney and petitioner's occupation as a college professor, the couple also owned and operated a beef farm during the years at issue.  The name of this farm was "Mill Road Limousins."

During the years at issue, petitioner and Mr. Peterson maintained at least 2 joint bank accounts at local financial institutions.  One of these accounts was with Valley Bank (the Valley account) and the other was with Menomonie Farmer's Credit Union (the Menomonie account).  The couple conducted their personal and business affairs from both accounts.  Between February 3, 1990 and January 3, 1991, petitioner and Mr. Peterson wrote checks against the Valley account totaling $111,100.72.  Of this amount, petitioner wrote checks totaling $88,532.95, and Mr. Peterson wrote checks totaling $22,567.77.  The records for the Valley account indicate that the account had a balance of

$6,336.96 on February 1, 1990 and $4,934.95 on January 3, 1991. Between June 13, 1990 and January 2, 1991, petitioner and Mr. Peterson wrote $31,476.39 worth of checks against the Menomonie account. Of this amount, petitioner wrote checks totaling $8,519.84, and Mr. Peterson wrote checks totaling $4,728.07. An employee named Jeff White, who worked for the Petersons, wrote checks against the account totaling $11,699.19.[2] The records from the Menomonie account indicate that the account had a balance of $20.90 on March 6, 1990 and $3,892.79 on December 31, 1990. Petitioner managed the account records for both of these accounts.

Mr. Peterson prepared the couple's 1990 Federal income tax return. That return reflects the following amounts of gross income:

| | |
|---|---|
| Wages | $64,258 |
| Interest | 1,091 |
| Other gains | 5,280 |
| Gross rents | 15,982 |
| Gross farm income | 3,570 |
| total | $90,181 |

The couple's 1990 return also reflects the following tax withholdings and expenditures:

| | |
|---|---|
| Federal income tax withholdings | $ 10,458.00 |
| Social Security tax withholdings | 4,962.43 |
| State tax withholdings | 4,082.18 |
| Rental expenses | 11,465.00 |
| Farm expenses | 65,219.00 |
| Depreciable assets purchased | 95,319.86 |
| total | $191,506.47 |

---

[2]It is unclear from the record who wrote the remaining $6,529.29 worth of checks.

Accordingly, as reflected on the couple's 1990 tax return, a difference of $101,325.47 exists between the amount of gross income and total withholdings and expenditures.

None of the funds that Mr. Peterson misappropriated in 1990 was reported on the couple's joint return for that year, and, because their beef farm operation generated large business losses that offset the couple's reported income, the couple reported no Federal income tax liability for taxable year 1990. Prior to signing the couple's 1990 joint return, petitioner examined its content and expressed concern with a farm loss but nonetheless signed the return.

In February 1992, Mr. Peterson's daughter, Lucy, an attorney practicing in Mr. Peterson's firm, informed petitioner that Mr. Peterson had embezzled an undetermined sum from the estate. Prior to this time, petitioner had no actual knowledge of the embezzlements. When petitioner was examining the couple's joint return for 1991, she asked Mr. Peterson whether the embezzled funds were being reported on the return. Mr. Peterson replied in the affirmative and informed petitioner that $45,000 was being reported on a Schedule C attached to the return in order to account for the funds that he embezzled during 1991. Having limited this amount to $45,000, $141,000 of the amount Mr. Peterson misappropriated in 1991 was not reported on the couple's 1991 joint return.

Respondent determined that the amounts of unreported embezzlement income in 1990 and 1991 were $115,500 and $168,500, respectively.  The parties now agree, however, that the actual amounts of unreported income were $136,901 and $141,000 for 1990 and 1991, respectively.

OPINION

As a general rule, a husband and wife who file joint tax returns are jointly and severally liable for Federal income tax due on their combined incomes.  Sec. 6013(d)(3); Resser v. Commissioner, 74 F.3d 1528, 1534 (7th Cir. 1996), revg. T.C. Memo. 1994-241; Park v. Commissioner, 25 F.3d 1289, 1292 (5th Cir. 1994), affg. T.C. Memo. 1993-252.  Section 6013(e), however, mitigates this general rule to some extent.  Park v. Commissioner, supra.  Nonetheless, Congress regards joint and several liability as an important counterpart to the privilege of filing joint tax returns, which generally results in a lower tax on the combined incomes of spouses than would be due were they to file separate returns, and any relaxation of the rule of joint and several liability depends upon compliance with the conditions of section 6013(e).  Sonnenborn v. Commissioner, 57 T.C. 373, 380-381 (1971).  However, because of its remedial purpose, the "innocent spouse" rule, as section 6013(e) is commonly referred, must not be given an unduly narrow or restrictive reading.  Friedman v. Commissioner, 53 F.3d 523, 528-29 (2nd Cir. 1995), affg. in part and revg. in part T.C. Memo. 1993-549; Sanders v.

United States, 509 F.2d 162, 167 (5th Cir. 1975). The question of whether a taxpayer has established that he or she is entitled to relief as an "innocent spouse" is one of fact. Park v. Commissioner, supra at 1291.

Pursuant to section 6013(e)(1), an "innocent spouse" is relieved of liability if he or she proves that: (1) A joint return has been made for a taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) he or she did not know, and had no reason to know, of such understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such understatement. See Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner bears the burden of establishing that each of the four requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473; Sonnenborn v. Commissioner, supra at 381-383. Moreover, the requirements of section 6013(e) are conjunctive; a failure to meet any one requirement prevents a spouse from qualifying for relief. Park v. Commissioner, supra at 1292; Purcell v. Commissioner, supra; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

The parties agree that petitioner and Mr. Peterson filed a joint return for each of the taxable years at issue. The parties

also agree that there is a substantial understatement of tax attributable to grossly erroneous items of Mr. Peterson for each of the taxable years at issue. Respondent contends, however, that petitioner knew or had reason to know of such substantial understatements and that it would not be inequitable to hold her liable for the deficiencies attributable to those understatements. Petitioner disagrees.

Section 6013(e)(1)(C)

In resolving whether petitioner had reason to know that the returns she signed for the years at issue contained substantial understatements within the meaning of section 6013(e)(1)(C), the Court must inquire whether a reasonably prudent person, under the circumstances of petitioner, could have been expected to know at the time of signing each return that each such return contained a substantial understatement or that further investigation was warranted. Bliss v. Commissioner, 59 F.3d 374, 378 (2d Cir. 1995), affg. T.C. Memo. 1993-390; Park v. Commissioner, supra at 1293 (citing Sanders v. United States, supra at 166-167 and n.5); Bokum v. Commissioner, supra at 148. The relevant knowledge is of the transaction giving rise to the income omitted from the return, rather than of the tax consequences of such transaction. Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975). Consequently, a spouse who has reason to know of such a transaction does not qualify for relief as an "innocent spouse." Park v. Commissioner, supra; Sanders v. United States, supra.

Additionally, a spouse may have a duty to inquire further if he or she knows enough facts so as to be placed on notice of the possibility of a substantial understatement. Guth v. Commissioner, 897 F.2d 441, 444-445 (9th Cir. 1990), affg. T.C. Memo. 1987-522. Factors to be considered in determining whether a taxpayer had reason to know within the meaning of section 6013(e)(1)(C) include: (1) The level of education of the spouse seeking relief; (2) the alleged innocent spouse's involvement in his or her family's financial and business activities; (3) any substantial unexplained increase in the family's standard of living; and (4) the culpable spouse's evasiveness and deceit about the family's finances. Resser v. Commissioner, supra at 1536. In reaching our decision, we consider the interaction among these factors, and different factors may predominate in different cases. Bliss v. Commissioner, supra at 378.

With respect to each taxable year at issue, we find that petitioner has failed to establish that she had no reason to know that the return contained a substantial understatement.

We first consider petitioner's level of education. It is clear from the record, as well as from our observations at trial, that petitioner is a highly educated, intelligent woman. She holds undergraduate and graduate degrees from a respected academic institution. Not only has she taught at the high school level, but she has been a university professor for nearly 20 years. Despite such accomplishments and experience, however,

petitioner argues that, because her area of expertise is limited to the study of fabrics and clothing, rather than business and accounting, we should attribute little if any weight to her academic degrees and status as a professor. We reject petitioner's efforts to attenuate her academic accomplishments by pointing to the nature of her expertise. Based on the record in the instant case, we are satisfied that a reasonably prudent taxpayer with petitioner's education would have had the ability to understand that there was a substantial understatement on each of the joint returns. While it is not uncommon for courts to conclude that highly educated intelligent taxpayers are entitled to innocent spouse relief, cf. Resser v. Commissioner, 74 F.2d 1528 (7th Cir. 1996); Friedman v. Commissioner, 53 F.3d 523 (2d Cir. 1995) ; Foley v. Commissioner, T.C. Memo. 1995-16; Robertson v. Commissioner, T.C. Memo. 1992-32, the facts of the instant case do not support a similar conclusion. We do not believe that it was necessary for petitioner to have possessed specialized knowledge and education in order for her to have had reason to know income was being omitted from her joint returns. This case does not involve transactions the nature of which would require special understanding or knowledge to appreciate. Rather, it involves the omission of embezzlement income. Cf. Resser v. Commissioner, supra. That Mr. Peterson's law practice may have been complex in nature, and despite petitioner's professed lack of knowledge with respect to the operation of that practice, is

inconsequential.  Accordingly, we find that petitioner's level of education supports respondent's claim that petitioner knew or had reason to know of the substantial understatements contained in the joint returns for both taxable years at issue.

The second factor we consider when assessing whether a taxpayer had reason to know of the existence of a substantial understatement at the time such taxpayer signed his or her return focuses on the taxpayer's involvement in his or her family's business and financial affairs.  We separately analyze this factor with respect to each taxable year at issue.

### Taxable Year 1990

Petitioner managed her family's checkbooks during taxable year 1990.  She also was her household's principal bill payer.  During taxable year 1990, petitioner drew checks totaling approximately $97,052 against the family's bank accounts.  Similarly, petitioner's former husband drew checks totaling approximately $27,296 against the accounts.  Additionally, another $18,228 was drawn against the accounts.  Consequently, at least $142,576 passed through these accounts during taxable year 1990.  This was approximately $52,000 more than the gross income of $90,181 reported on the Petersons' return for 1990.  As manager of the bank accounts, petitioner was obviously aware of this activity.

Petitioner attempts to clarify this disparity by explaining that her former husband borrowed substantial amounts of money and

cashed in various life insurance policies during 1990. The proceeds from such loans and insurance policies, petitioner contends, more than account for the imbalance between the couple's earnings and expenditures for taxable year 1990. At trial, however, when questioned whether she could substantiate such allegations, petitioner explained that, although she possessed documentary proof of the above-referenced loans, she had not brought such documentation to court. Moreover, other than her own testimony, petitioner did not offer any corroboration for her assertion regarding the life insurance policies allegedly cashed in by her former husband. Although petitioner's testimony regarding the loans and life insurance policies was not contradicted at trial, we are not required to accept petitioner's self-serving testimony if we determine it to be improbable or questionable. Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; MacGuire v. Commissioner, 450 F.2d 1239, 1244 (5th Cir. 1971), affg. T.C. Memo. 1970-89; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also Lerch v. Commissioner, 877 F.2d 624 (7th Cir. 1989); Shapiro v. Rubens, 166 F.2d 659, 666 (7th Cir. 1948). Furthermore, it has long been settled that a party's failure to introduce evidence within his or her possession, and which, if true, would be favorable to him or her, gives rise to the presumption that if produced such evidence would be unfavorable. Wichita Terminal Elevator Co. v.

- 14 -

<u>Commissioner</u>, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also <u>Glimco v. Commissioner</u>, 397 F.2d 537, 541 (7th Cir. 1968, affg. T.C. Memo. 1967-119); <u>Frierdich v. Commissioner</u>, 925 F.2d 180 (7th Cir. 1991).

Petitioner also attempts to restrict the amount of weight we attribute to her involvement in her family's financial and business affairs by arguing that Mr. Peterson's embezzlement activities occurred at his law office and not at the couple's residence, explaining that the embezzled funds were funneled through the law practice and that she possessed minimal knowledge about such practice. This argument is without merit as it attempts to shift our focus of inquiry from her family's financial activities to Mr. Peterson's law practice. Granted, petitioner may not have known much about her former husband's law practice, but she knew how much money the family was spending and how much it was reporting as income.

A taxpayer claiming "innocent spouse" relief cannot simply turn a blind eye to facts within his or her reach that would have put a reasonably prudent taxpayer on notice that further inquiry was necessary. <u>Sanders v. United States</u>, 509 F.2d at 169; <u>Bokum v. Commissioner</u>, 94 T.C. at 148; <u>McCoy v. Commissioner</u>, 57 T.C. 732, 734 (1972). Even a cursory examination of petitioner's 1990 return should have placed her on notice that something was amiss. The return listed expenditures and tax withholdings totaling approximately $191,506. Of this amount, roughly $95,319 is

attributable to assets acquired for the beef farm and $65,219 is attributable to out-of-pocket Schedule F expenses. Despite whether petitioner was aware of the tax withholdings, or even the depreciation deductions claimed on the return, she was fully aware of the out-of-pocket expenditures. Not only did she write checks in order to pay many of the farm expenses, petitioner's former husband did not conceal the assets acquired for the couple's farm; i.e. the vehicles, farm equipment, livestock, etc. In fact, the nature of such assets make them noticeable, so petitioner was undoubtedly aware of there existence. In any event, a summary review of the return indicates that, even without regard to living expenses, the expenditures and tax withholdings totaled at least $101,325 more than the $90,181 reported as gross income for taxable year 1990.

We conclude that petitioner had sufficient involvement in her family's financial affairs to put a reasonable person in her position on notice that the income reported in her 1990 return was erroneous or that further inquiry was warranted.

### Taxable Year 1991

Just as she did for taxable year 1990, petitioner managed her family's checkbooks for taxable year 1991. On their 1991 return, petitioner and her former husband reported $45,000 of the $186,000 that Mr. Peterson had embezzled during the taxable year. Petitioner maintains that at the time she signed the return on August 15, 1992, she believed that all funds embezzled by Mr.

Peterson during taxable year 1991 were reported on the return and that that amount totaled $45,000. She claims that she specifically asked Mr. Peterson whether all embezzled funds were reported on the return and that Mr. Peterson assured her that the above-referenced $45,000 figure accounted for all such funds. Further, petitioner asserts that she inquired at Mr. Peterson's law office as to whether anyone there knew the actual amount that Mr. Peterson had embezzled during 1991. Office personnel, she testified, told her that the estate had received special treatment and that, as a result of such treatment, and because no paper trail had been created, the actual amount of Mr. Peterson's embezzlement could not be determined. Petitioner also claims to have been told that the estate's file had been forwarded to an attorney unaffiliated with Mr. Peterson's firm, and that, as a result, she was unable to pursue the matter further.

Respondent attempts to refute each of these allegations. Specifically, she argues that, because Mr. Peterson was a known embezzler and had suffered from a memory-impairing stroke the prior year, it was unreasonable for petitioner to accept his word that he had only embezzled $45,000 in 1991 and that all such embezzled funds were reported on the couple's 1991 return. Instead, respondent claims, petitioner should have contacted the attorney who had replaced Mr. Peterson as the estate's attorney in order to determine the validity of Mr. Peterson's representation that all embezzled funds were accounted for in the

return. Because petitioner did not conduct such an inquiry, respondent contends that she failed to discharge her duty to inquire. Consequently, respondent maintains that, at the time she signed her 1991 return, petitioner knew or had reason to know that such return contained a substantial understatement.

We find respondent's argument in this regard unpersuasive. We reject her assertion that petitioner was obligated wholly to discard the trust and confidence she had in Mr. Peterson simply because he had engaged in prior illegal activity. However, petitioner bears the burden of proof on this issue, and she has fallen short in carrying that burden. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); see Purcell v. Commissioner, 826 F.2d at 473; Sonnenborn v. Commissioner, 57 T.C. at 381-383 (1971). Petitioner's argument with respect to taxable year 1991 is bootstrapped to her argument with respect to taxable year 1990. She maintains that she lacked reason to know of the understatement for 1991 because her husband's embezzlement activities took place at his law office and not at the couple's residence. For reasons explained earlier in this opinion, we find this argument unpersuasive. Petitioner has provided little convincing evidence in this case, and her arguments are cursory and attenuated. Moreover, although petitioner testified that she questioned the staff at Mr. Peterson's office about the embezzlement, she failed to corroborate that testimony. Because petitioner's testimony in this regard is self-serving and

questionable, we find it to be unreliable and lacking credibility.[3]  Accordingly, we conclude that petitioner has failed to establish that she lacked involvement in her family's financial and business affairs to an extent sufficient to conclude that she had no reason to know that the income reported in the couple's return for taxable year 1991 was erroneous.

The third factor we consider is the presence of unusual or lavish expenditures by petitioner's family.  The presence of unusual or lavish expenditures may put a taxpayer on notice that it is probable that income is being omitted from a joint return. Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979).  A taxpayer claiming relief as an "innocent spouse" cannot close his or her eyes to unusual or lavish expenditures that might have alerted him or her to unreported income.  Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972).

Petitioner's argument with respect to this factor is considerably thin.  It essentially amounts to a general denial that either she or her former husband experienced any change in their individual lifestyles and that the couple did not make any unusual or lavish expenditures during either taxable year at

_____

[3]As previously noted, uncontradicted questionable testimony need not be accepted by this Court.  See Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo 1970-335;  MacGuire v. Commissioner, 450 F.2d 1239, 1244 (5th Cir. 1971) affg. T.C. Memo. 1970-89; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

issue. We concluded that petitioner has failed to satisfy her burden of proof as to this factor with respect to both taxable years at issue. In taxable year 1990, the couple acquired more than $95,000 of depreciable assets for their farming operation. Among the assets purchased were at least 19 head of livestock, a Ford truck, two trailers, and two tractors. Whether such purchases are to be considered lavish and unusual for petitioner's household is obviously a question of fact, as "one person's luxury can be another person's necessity, and the lavishness of an expense must be measured from each family's relative level of ordinary support." Sanders v. United States, 509 F.2d at 168. But we are unable to make a proper assessment of the asset acquisitions involved in this case because the record lacks evidence against which an appropriate comparison can be made. Perhaps petitioner and her former husband routinely acquired large quantities of livestock, as well as multiple vehicles and farm equipment, but nothing in the record suggests this to be the case. In fact, petitioner does not even argue as much.

Similarly, with respect to taxable year 1991, other than petitioner's general denial, as noted above, the record lacks evidence of whether petitioner and her former husband made unusual or lavish expenditures, or experienced significant changes in lifestyle. Persuasive evidence would have been relatively easy for petitioner to provide, yet she elected not to

provide it, relying instead on her general denial. Due to the lack of persuasive evidence in the record, and in light of our concerns with petitioner's credibility, we are simply reluctant to conclude that petitioner's self-serving denial satisfies her burden of proof as to this factor.

The fourth factor we consider when assessing whether a taxpayer had reason to know of the existence of a substantial understatement at the time he or she signed the return focuses on whether the taxpayer's spouse was forthright about the omitted income. Because petitioner did not receive actual knowledge of the embezzlement income at issue in this case until February 1992, it is clear that Mr. Peterson was evasive with respect to his embezzlement activities during both taxable years at issue. However, while the record contains evidence that Mr. Peterson might have maintained a "secret" checking account, such evidence is not sufficient to convince us that the funds Mr. Peterson embezzled were accumulated in that account. To the contrary, it is clear from the record that during 1990 a large amount of otherwise unexplained cash flowed through the couple's two joint accounts managed by petitioner. Accordingly, though petitioner did not acquire actual knowledge of her former husband's embezzlement activity until after she signed the joint return for taxable year 1990, we find that Mr. Peterson did not attempt to conceal from petitioner the asset acquisitions or other expenditures made with embezzled funds during that year.

With respect to taxable year 1991, we find that petitioner has established that her former husband attempted to conceal the "extent" of his embezzlement activities by misleading petitioner when she inquired whether the $45,000 entry on their return accounted for all of the couple's 1991 embezzlement income.

Having thoroughly examined the circumstances of the instant case, we conclude that a reasonably prudent person would have seriously questioned the gross income reported in the joint return petitioner and her former husband filed for taxable year 1990. None of the four factors discussed above favors petitioner with respect to taxable year 1990. We therefore conclude that petitioner had a duty of inquiry with respect to the correctness of the reported income and that she failed to discharge that duty. See Park v. Commissioner, 25 F.3d at 1293; Sanders v. United States, supra at 167. Accordingly, we find, based on the entire record, that petitioner had reason to know of the substantial understatement of tax on her 1990 return resulting from the omission of the income embezzled by Mr. Peterson during taxable year 1990.

With respect to taxable year 1991, our examination of the circumstances of the instant case indicates, and we find accordingly, that petitioner has failed to establish that she had no reason to know of the substantial understatement of tax on her 1991 return resulting from the omission of the income embezzled by Mr. Peterson during taxable year 1991. Of the four factors

discussed above, only Mr. Peterson's evasiveness benefits petitioner. The weight we attribute to such factor, however, does not exceed the amount of weight we attribute to any of the remaining three factors, each of which favors respondent. In light of the facts of the instant case, we do not think that Mr. Peterson's evasiveness was of such an extent that petitioner could not have had reason to know of the understatement of income in the return.

Section 6013(e)(1)(D)

The next matter we consider is whether it would be inequitable to hold petitioner liable for the deficiencies in tax attributable to her former husband's embezzlement activities. See sec. 6013(e)(1)(D). In answering this question, we take into account all of the facts and circumstances. Id.; sec. 1.6013-5(b), Income Tax Regs. A factor to be considered is whether the spouse seeking relief significantly benefited, either directly or indirectly, from the omitted income. Buchine v. Commissioner, 20 F.3d 173, 181 (5th Cir. 1994), affg. T.C. Memo. 1992-36; sec. 1.6013-5(b), Income Tax Regs. Normal support, which is to be measured by a couple's circumstances, is not considered a significant benefit. Sanders v. United States, supra at 168; Terzian v. Commissioner, 72 T.C. at 1172; Mysse v. Commissioner, 57 T.C. at 699. A significant benefit exists if expenditures have been made which are unusual for the taxpayer's accustomed lifestyle. Terzian v. Commissioner, supra. Other

factors include: (1) Whether the spouse seeking relief has been deserted by the other spouse or is divorced or separated from that spouse, sec. 1.6013-5(b), Income Tax Regs.; and (2) probable future hardships that would be visited upon the purportedly "innocent spouse" were he or she not relieved from liability. Sanders v. United States, supra at 171 n.16.

Based upon the record in the instant case, we conclude that petitioner has failed to establish that she did not receive significant benefits from the funds that Mr. Peterson embezzled during taxable years 1990 and 1991. For 1990, the record indicates that the couple enjoyed more disposable income as a result of the embezzled funds than would have been otherwise available from the couple's reported earnings. Petitioner has failed to establish that Mr. Peterson used the embezzled funds in a manner that did not benefit her significantly. To the contrary, and particularly with respect to taxable year 1990, the record indicates that the funds were used for the significant benefit of the family and its beef farm operation. Petitioner has not established that such benefits were consistent with her then existing lifestyle, nor has she established that they constituted normal support.

When assessing whether it would be inequitable to hold petitioner liable for the deficiencies attributable to Mr. Peterson's embezzlement activity, we also consider whether petitioner was deserted or divorced subsequent to that activity.

The couple did receive a divorce subsequent to 1991.  We find, however, that such circumstance does not outweigh the significant benefits petitioner received from the embezzled funds. Furthermore, petitioner has not established that any hardship she would encounter as a result of incurring liability for the deficiencies attributable to the omission of the embezzled funds from the 1990 or 1991 returns would make it inequitable to hold her jointly liable for those deficiencies.

We find, therefore, that it would not be inequitable to hold petitioner liable for the understatements attributable to the funds embezzled by Mr. Peterson in taxable years 1990 and 1991.

Because petitioner has failed to satisfy all of the conjunctive factors set forth in section 6013(e)(1), we hold that she does not qualify for "innocent spouse" relief and is therefore jointly and severally liable for the deficiencies in tax, additions to tax, and penalties for 1990 and 1991.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>